588 So.2d 1369 (1991)
STATE of Louisiana, Appellee,
v.
Willie CONWAY, Jr., Appellant.
No. 22794-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
*1371 Robert S. Tew, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Jerry Jones, Dist. Atty., Stephen Winters, Carolyn Salley Patterson, Asst. Dist. Attys., Monroe, for appellee.
Before VICTORY, BROWN and STEWART, JJ.
STEWART, Judge.
Defendant, Willie Conway, Jr., was charged by bill of indictment with two counts of distribution of marijuana, in violation of LSA-R.S. 40:966, and two counts of distribution of cocaine, in violation of LSA-R.S. 40:967. A jury found him guilty as charged. The trial court sentenced defendant on each count to serve seven years at hard labor with the sentences to be served consecutively. The court also imposed a $5,000 fine, or one year hard labor in default of payment thereof, on each of the marijuana charges.
The defendant appeals his sentence as excessive and asserts that his conviction is unsupported by the evidence. We affirm the conviction, vacate the sentence, and remand for resentencing.

*1372 FACTS
On November 8, 1989, Deputy Jim Livingston, working undercover with the Metro Narcotics Unit (MNU) of Ouachita Parish, participated in a surveillance operation conducted by Monroe Police Officer Jerry Stansbury. A cooperating individual (CI) introduced Livingston to the defendant as someone interested in purchasing drugs. Livingston was equipped with a radio transmitter which allowed Officer Stansbury to monitor the conversations between the MNU agents and the defendant. Defendant sold $40 worth of cocaine and $20 worth of marijuana to Deputy Livingston.
Officer Stansbury and Deputy Livingston conducted a similar operation on November 14, 1989. The defendant, the CI, and Livingston again traveled to the Parkview Apartments where the defendant sold $40 worth of cocaine and $20 worth of marijuana to Deputy Livingston. The defendant was subsequently charged by bill of indictment with two counts of possession of marijuana, with intent to distribute and two counts of possession of cocaine, with intent to distribute.
At trial, Deputy Livingston testified that on November 8, 1989, a CI introduced him to a person identified as Willie Conway. He discussed, with Conway and the CI, plans to buy rock cocaine and marijuana. Conway said they needed to go to the Parkview Apartments where Conway could get the drugs. They drove to the apartments and Livingston gave defendant $40. Defendant disappeared for a few minutes, returned and gave Livingston some rock cocaine. Livingston told the defendant he also wanted some marijuana and gave defendant $20. Defendant again departed and returned in a few moments with two dime bags of marijuana. Livingston gave defendant another $20 as payment for obtaining the drugs, and left. Livingston gave the suspected controlled dangerous substances (CDS) to Officer Stansbury, who placed identifying data on their packages and delivered them to Linda Armstrong of the North Louisiana Crime Lab for analysis. The next day, Livingston identified defendant from a photo lineup as the person from whom he purchased the CDS.
Deputy Livingston further testified that, on November 14, 1989, Livingston and the CI met with defendant and asked to buy cocaine and marijuana. Defendant again said they would have to go to Parkview Apartments. When they arrived there Livingston gave $60 to defendant. Defendant left for a few minutes, then returned with crack cocaine. Livingston protested that the rocks, which he described as similar in size to granular salt pebbles, were too small for the price. Defendant agreed and left again. He returned and gave Livingston a larger rock of cocaine and some marijuana. At that time, Livingston noticed a man standing about six feet from the car aiming a pistol at the car, so Livingston and the CI quickly left the area. As before, Livingston gave the suspected CDS to Officer Stansbury who delivered the CDS to Linda Armstrong.
Detective Fried, who also participated in the surveillance operations testified that he monitored the radio transmissions and recorded them on audio tape. On November 8, Fried heard the defendant identify himself as Will Conway and talk about getting "a rock" for Livingston.
Linda Armstrong, a criminalist and manager of the North Louisiana Crime Lab, testified that she analyzed the evidence she received from Officer Stansbury. Armstrong determined that the evidence from each reported transaction consisted of cocaine and marijuana.
The six-person jury found the defendant guilty as charged. After pre-sentence investigation (PSI), the trial court sentenced the defendant to seven years at hard labor on each count of distribution of cocaine. On each count of distribution of marijuana, the defendant was sentenced to seven years and hard labor, and a fine of $5,000 or one year imprisonment in default of payment. Defendant appeals, asserting that the evidence against him was insufficient to sustain the findings of guilty and that the sentence is excessive.

*1373 DISCUSSION
Assignments of Error
The defendant asserts that the verdict is contrary to the law and the evidence. Defendant argues that the evidence, consisting mainly of the testimony of the undercover officer who purchased the drugs is insufficient to prove guilt of the charged offenses beyond a reasonable doubt.
The crime of distribution is the knowing or intentional distribution of a controlled dangerous substance. State v. Seay, 521 So.2d 1206, 1214 (La.App. 2d Cir.1988).
The testimony of a single undercover police officer is sufficient to convict a defendant charged with drug distribution. See State v. Christy, 509 So.2d 829 (La. App. 1st Cir.1987), writ denied, 513 So.2d 296 (La.1987); State v. Wright, 564 So.2d 1269 (La.App. 4th Cir.1989); See also, State v. Williams, 554 So.2d 141 (La.App. 2d Cir.1989).
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime and the defendant's identity as perpetrator of the crime beyond a reasonable doubt.
Officer Livingston positively identified the defendant as the person who sold him substances which later were tested and determined to be cocaine and marijuana. He made this identification both face-to-face at trial and by photo-lineup. Defendant's guilty knowledge and intent are shown from the circumstances attendant to the transactions. The defendant requested that the transactions take place at the Parkview Apartments, and accepted payment for the drugs as well as for his services in obtaining the drugs. When taken in the light most favorable to the prosecution, this testimony, along with other corroborating evidence, is sufficient to sustain the convictions. This assignment is without merit.
The defendant also asserts that the trial court erred by imposing an excessive sentence. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Mims, 550 So.2d 760 (La. App. 2d Cir.1989); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
The second prong, whether the sentence imposed is too severe, depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra; State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988).
*1374 Defendant concedes, in brief, that the trial judge adequately complied with the guidelines of LSA-C.Cr.P. Art. 894.1 in imposing sentence. However, the defendant claims the court erred because (1) he is a first felony offender; (2) there was no showing he would not respond "affirmatively" to probationary treatment; and (3) the four seven-year consecutive sentences resulting in a total of 28 years at hard labor should be two groups of two concurrent seven-year sentences, one group being consecutive to the other, resulting in a total prison term of 14 years at hard labor.
A trial court is not required to render a suspended sentence or probation on a first felony offense. See State v. McKethan, 459 So.2d 72 (La.App. 2d Cir. 1984); State v. Tully, 430 So.2d 124 (La. App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983).
In determining whether sentences are excessive, we should consider, among other factors, whether convictions arise out of a single course of criminal conduct. State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. Art. 883.
It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Derry, 516 So.2d 1284 (La.App. 2d Cir. 1987), writ denied, 521 So.2d 1168 (La. 1988). The general rule is that sentences served for crimes arising out of a single course of conduct are served concurrently instead of consecutively. State v. Williams, 445 So.2d 1171 (La.1984); Ortego, supra. However, concurrent sentences arising out of a single course of conduct are not mandatory. State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985). Consecutive sentences arising out of a single course of conduct are not necessarily excessive, and all factors are to be considered. State v. Beverly, 448 So.2d 792 (La.App. 2d Cir.1984), writ denied, 450 So.2d 951 (La.1984); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987); Williams and Ortego, both supra.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. State v. Thompson, 543 So.2d 1077 (La.App. 2d Cir.1989), writ denied, 551 So.2d 1335 (La.1989); State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987).
Unless there are specific reasons for a longer sentence, concurrent sentences rather than consecutive sentences are appropriate for convictions arising out of a single course of conduct, at least for a defendant with no prior criminal record and in the absence of a showing that public safety requires a longer sentence. LSA-C.Cr.P. Art. 883; State v. Armstead, 432 So.2d 837 (La.1983). While none of the individual sentences imposed may be excessive, the imposition of consecutive sentences may be so grossly disproportionate to the crimes committed as to shock our sense of justice. State v. Cann, 471 So.2d 701 (La.1985).
State v. Cathey, 569 So.2d 627, 632 (La. App. 2d Cir.1990). However, consecutive sentences may be justified when, due to the defendant's past conduct or repeated criminality over an extended period, the defendant poses an unusual risk to the safety of the public, similar to that posed by habitual or dangerous offenders. State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990); State v. Camps, 476 So.2d 864 (La.App. 2d Cir. 1985), writ denied 481 So.2d 616 (La.1986), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 658 (1986).
In Miller, supra, where the defendant was actively and regularly involved in drug trafficking, this court affirmed consecutive five-year sentences for convictions of distribution of marijuana and distribution of cocaine which arose from a February 3, 1988 transaction. The trial court also imposed a *1375 concurrent five-year sentence for a distribution of marijuana conviction which arose from a February 10, 1988 transaction. This court noted that
These two distinct transactions carried out a week apart and paid for separately are not part of a common scheme or plan, even though they involved the same undercover officer and the same location.
Miller, supra, at 896. There, the defendant was 33 years old and had a conviction for possession of marijuana which had been reduced from a charge of possession with intent to distribute. He was a high school graduate with a history of mental problems, and was drawing social security disability payments. The total value of drugs sold simultaneously was $130. The fact that the drugs were different indicated indiscriminate drug selling.
By contrast, in Cathey, supra, this court found excessive three consecutive sentences for two distributions of methamphetamine and one of cocaine, totalling 14 years, where the three transactions occurred within a two week period. The defendant was a 17-year-old youthful offender who was gainfully employed at the time of the offenses. Although not a large-scale dealer, she had been part of the drug culture since dropping out of high school at age 16. She was a first time criminal offender and was merely a "go-between." The amount of money involved in each of the three transactions ranged from $100 to $300. This court reversed the sentences and ruled that concurrent sentences were appropriate under the circumstances.
At the instant sentencing, the trial court had the benefit of a presentence investigation report which discussed the important elements noted above. Defendant was 32 years old at the time of the offenses. His wife and three children lived in South Carolina; he had not had contact with them for some time. He also had three other children by three different women. He claimed to provide child support when he was working. The defendant had a history of steady employment since 1979. His last employer, Robinson Business College, reported that he was an exemplary salesman. He received disability payments of $224 per month from the Veterans' Administration for an eye injury he received while in the U.S. Marine Corps. He admitted to continued use of marijuana and experimental use of crack cocaine and PCP. He had a criminal record of possession of marijuana in 1986, an acquittal on a distribution of marijuana charge in 1987, a nolle prossed aggravated assault charge in which he admitted he pointed a .22 pistol at another man, and a nolle prossed simple battery arrest in which his wife was the victim.
The trial court noted that defendant faced 120 years in prison and total fines of $60,000 for his two acts of accompanying police officers to an area widely known for drug distribution and obtaining marijuana and cocaine each time. The court reviewed the defendant's misdemeanor record, including the two marijuana charges mentioned above. The court noted that the defendant "readily resorted to the distribution of these illicit drugs for money," and that these crimes have multiple victims in society.
We find that the consecutive nature of these sentences is not supported by the record or the PSI.[1] The instant factual basis and sentencing factors fall between those of Cathey, supra, and Miller, supra. Like Miller, the instant defendant *1376 was not a youthful offender. He had a criminal history of drug involvement. He was an active, participating "user" in the drug culture who, for a profit, was a willing and indiscriminate seller of whichever drug was requested. However, as in Cathey, the instant facts involved small quantities of drugs in each of two separate occurrences within a one week period. The amount of money in each of the instant transactions, $40 for each cocaine sale and $20 for each marijuana sale, was small. There is merit to this assignment. However, in determining whether a sentence is excessive, we must consider factors other than consecutivity. State v. Williams, 445 So.2d 1171.
In State v. Lamb, 566 So.2d 462 (La.App. 2d Cir.1990), writ denied, 569 So.2d 985 (La.1990), this court approved concurrent 30 year hard labor sentences imposed on a first felony offender for each of two counts on distribution of cocaine. There, the defendant sold large quantities of cocaine from a hotel room where he was found with several packets of cocaine and $7,000. The defendant had been arrested and released on bond for several weeks when he was arrested again at the same hotel. At the time of his second arrest, police found 187 grams of cocaine. Although the defendant was charged by bill of information with one count of distribution of cocaine and one count of possession of 28 grams or more but less than 200 grams of cocaine, he plead guilty to two counts of distribution of cocaine.
In contrast, this court has found sentences of 10 years at hard labor to be excessive for first felony offenders who were not large scale dealers. State v. Miller, 587 So.2d 125 (La.App. 2d Cir.1990) involved a sale of two rocks of cocaine for $60. The defendant was charged with, and found guilty of, one count of distribution of cocaine. The 39-year-old defendant had never been gainfully employed, had one prior misdemeanor conviction, and admitted using crack cocaine and marijuana. Noting that the defendant had a drug abuse problem and was convicted of selling a small quantity of drugs for a small amount of money, this court determined that, on those facts, the maximum sentence which could be affirmed was 8 years at hard labor. Similarly, in State v. Smith, 576 So.2d 105 (La.App. 2d Cir.1991), the defendant sold two rocks of cocaine for $40. The 28-year-old defendant denied selling the cocaine but was found guilty of distribution of cocaine. This court noted that the Supreme Court had defined the permissible range of sentence, for youthful first offenders on the bottom end of selling CDS in small quantities, as between five and ten years. See State v. Tilley, 400 So.2d 1363 (La.1981). This court then noted that the defendant was a small time street dealer who had a good employment history and was convicted of selling a small quantity of drugs for a small amount of money, and remanded the case for resentencing with a maximum sentence of 8 years at hard labor.
The instant defendant sold two rocks of cocaine at $40 each and two bags of marijuana at $20 each. The record contains no indication that he was a large scale drug dealer, other than a statement by one officer that defendant had sold CDS for a long time and should receive the maximum sentence. Unlike Lamb, this defendant dealt in small quantities of CDS for small amounts of money. Defendant was a high school graduate who had been honorably discharged from the Marines after 4 years of service. His employer described him as a good employee who was both punctual and productive. However, at the time of the PSI, defendant had a pending felony drug charge.
Because we have determined that the instant record and PSI do not support consecutive sentences for either pair of two convictions which arises from a single offense date, we find that defendant's total prison exposure for each offense date is from five to thirty years at hard labor. We view Lamb as the upper end of the permissible range of distribution of cocaine sentences for first felony offenders who are not youthful offenders. Miller and Smith, however, indicate that a ten-year hard labor sentence for a distribution of cocaine conviction, is generally excessive for a first felony offender such as the instant defendant *1377 who was at the bottom level of selling CDS in small quantities. We find excessive the 28 year total term of imprisonment imposed on this first felony offender. On these facts, the maximum total term of imprisonment we could affirm is twenty years at hard labor. We therefore vacate the sentences and remand the matters for resentencing.
We note that the defendant filed directly with this court a pro se "reply brief" and filed with the trial court additional assignments of error. The trial court had ordered assignments of error to be filed by November 15, 1990. Defendant filed his pro se assignments on May 9, 1991.
The only matters reviewable on appeal are errors patent and those properly designated as assignments of error. LSA-C.Cr.P. Art. 920. For errors to be included in assignments of error reviewable on appeal, the requisite procedures must have been followed. LSA-C.Cr.P. Arts. 844, 916(1) and (5), and 920 and Comment (b); See also State v. Lavene, 343 So.2d 185, 187 (La.1977).
Under LSA-C.Cr.P. Arts. 844 and 920, assignments of error must be filed in and within the time specified by the trial court. State v. Ramsey, 450 So.2d 660 (La.1984); State v. Cox, 369 So.2d 118, 121 (La.1979); State v. Hunt, 573 So.2d 585, 587 n. 1 (La.App. 2d Cir.1991); State v. Woods, 444 So.2d 1332, 1334 (La.App. 2d Cir.1984). A copy of the assignments of error must be forwarded to the trial judge when assignments of error are filed. The trial court has continuing jurisdiction to extend the time for filing assingments of error and to receive assignments of error after entering the order of appeal. See e.g., State v. Lavene, supra. This procedure facilitates the trial court's preparation of per curiam comments and helps to fix the issues to be urged on appeal. LSA-C.Cr.P. Art. 844 and Comment (c); see also Ramsey, Cox, Lavene, and Woods, all supra.
Because defendant's alleged errors were not timely filed in the trial court and no extension was requested to allow him to file additional assignments as grounds for reversal, the trial judge did not have the opportunity to prepare per curiam comments. Having failed to follow appellate procedure timely and properly as set forth in our Code of Criminal Procedure, defendant's supplemental assignments are not properly before this court. These improperly assigned errors cannot be considered on appeal. See State v. Dennis Ray Gene, 587 So.2d 18 (La.App. 2d Cir.1991).
Error Patent
Article 880 of the Louisiana Code of Criminal Procedure expressly mandates that the trial court give the defendant credit for time served. The instant sentence does not reflect credit to the defendant for time served. Although this deficiency was not assigned as error, it constitutes error patent in that it is error discovered by mere inspection of the proceedings without inspection of the evidence. LSA-C.Cr.P. Art. 920(2), State v. Agee, 534 So.2d 483 (La.App. 5th Cir.1988), writ denied, 540 So.2d 326 (La.1989).
An appellate court may correct an illegal sentence not involving the exercise of the court's discretion. LSA-C.Cr.P. Art. 882; see also, State v. Fraser, 484 So.2d 122 (La.1986). Defendant's motion for discharge without bail indicates that he served at least two months in jail prior to sentencing. Accordingly, we order the trial court to include credit for time served as part of its resentencing.

CONCLUSION
The defendant's conviction is affirmed. However, for the foregoing reasons, we vacate the sentence and remand for resentencing in accordance with this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
BROWN, J., agrees with affirmation of the conviction but dissents from reversal of the sentence for written reasons.
BROWN, Judge, agrees with the conviction but dissents from the reversal of the sentence.
Defendant's conviction certainly should be affirmed. The evidence strongly supports *1378 the jury's verdict of guilt. The evidence likewise strongly supports the sentence imposed and the majority's determination that this sentence was excessive is simply the substitution of its view for that of a trial judge who was knowledgeable about this defendant and his community.
Defendant was 34 years old and not a youthful offender. He sold both cocaine and marijuana on two separate occasions to an undercover officer resulting in being convicted on four counts of distribution. All sales took place at an apartment complex.
In 1986 defendant faced charges of possession with intent to distribute marijuana. A jury found him guilty of a lesser charge of misdemeanor possession. In 1987 defendant was charged with distribution of marijuana but a jury found him not guilty. Since 1987 defendant has had charges but not convictions for simple battery and interfering with an officer. After this case, but prior to sentencing, defendant was indicted for possession with intent to distribute Schedule I and II controlled dangerous substances.
The PSI concludes with the statement that "(t)here appears to be little mitigating circumstances surrounding these offenses". An officer of the Metro Narcotic Unit stated in the PSI "... that he is very familiar with Conway, and Conway has been suspected of dealing drugs in the Ouachita Parish area for some time now... Conway has a significant past record; however, he has always been able to beat the charges in Court ... Conway is `a dyed in the wool drug dealer; he's pushing for a very long time and is very well entrenched in his drug dealing ... I would recommend the maximum sentence imposed in this case.'"
The record demonstrates that this defendant was a major drug dealer in the Ouachita Parish area. The testimony indicated that defendant's drug transactions with the undercover officer were protected by an armed conspirator and that the officer was in considerable danger during these dealings.
The trial court knew and understood the situation and a sentence of 28 years for a multiple seller of cocaine and marijuana is not excessive. On this record this court has no legitimate reason to find an abuse of discretion and it appears that the majority is substituting their opinion for that of the trial court.
NOTES
[1] In State v. Mims, 550 So.2d 760, 765 (La.App. 2d Cir.1989), appeal after remand, 566 So.2d 661 (La.App. 2d Cir.1990), writ denied, 569 So.2d 970 (La.1990), where this court did not have the benefit of a PSI for appellate review, this court stated:

When two or more offenses constitute the same act or transaction or are part of a common scheme or plan, concurrent sentences are generally appropriate, unless the trial court articulates other factors justifying consecutive sentences. * * * Nevertheless, ... without additional justification, these consecutive sentences, totalling eighteen years hard labor, may be unconstitutionally excessive.
In the present case, the sentencing court provided general reasons for these sentences, but it did not provide specific reasons for requiring that the sentences be served consecutively rather than concurrently. Absent such reasons, clearly stated in the record, that portion of the sentences ordering that they be served consecutively cannot stand.