688 So.2d 1320 (1997)
STATE of Louisiana
v.
George SORAPARU.
No. 96-KA-0116.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1997.
Rehearing Denied March 31, 1997.
Harry F. Connick, District Attorney of Orleans Parish, Teresa A. Tamburo, Assistant District Attorney of Orleans Parish, New Orleans, for State of Louisiana.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Defendant.
Before BARRY, PLOTKIN and MURRAY, JJ.
PLOTKIN, Judge.
In this appeal, we consider whether a resentence to the same sentence of forty years at hard labor for manslaughter is excessive in light of our previous opinion in State v. Soraparu, 93-1636 (La.App. 4th Cir. 1/19/95), 649 So.2d 1100, in which we vacated the *1321 original forty year sentence as excessive and remanded for resentencing.
On March 11, 1993, George R. Soraparu was charged by grand jury indictment with second degree murder in violation of La. R.S. 14:30.1. On April 20, 1993, after trial before a twelve-member jury, he was convicted of manslaughter (La. R.S. 14:31). On April 27, 1993, he was sentenced to serve forty years at hard labor. On appeal, this Court affirmed the conviction but vacated his sentence and remanded for resentencing. Soraparu, supra. On March 24, 1995, the trial court resentenced Soraparu to the same sentence of forty years at hard labor. He appeals this sentence.
The facts of the crime are described adequately in the previous published appeal. Soraparu, supra at p. 1-3, 1101-02. In that appeal, this Court found that the record did not justify the sentence imposed and that the sentence was disproportionately harsh when compared to other persons convicted of manslaughter. Id. at p. 9-11, 1105. The Court concluded the trial judge imposed the maximum sentence because he disagreed with the jury's finding that Soraparu was guilty only of a lesser included offense. Id. at p. 10, 1105. Therefore, the Court remanded for resentencing.
Soraparu was resentenced to the same sentence of forty years imprisonment at hard labor. He did not file a motion to reconsider the sentence in accordance with Code of Criminal Procedure article 881.1. Defense counsel did, however, object orally at the resentencing hearing, which sufficed to preserve the issue of excessiveness for appellate review. See State v. Caldwell, 620 So.2d 859 (La.1993).
At the original sentencing, the trial judge stated:
The facts to reiterate, that the defendant walked up behind the victim in this matter, Jimmie Watson and placed the gun to the back of his head, fired the gun and the victim dropped dead. There was an eye-witness to this incident. There was some indication that there was some argument that had been going on between the victim and other parties sometime prior to this particular episode.
The Court feels that this act was a very cold and deliberate act. The Court feels that the jury gave the defendant some serious consideration in finding him guilty of the charge of manslaughter. This was in all essence a second degree murder and the defendant received some considerations by the jury. The Court has considered the sentencing guidelines under 894.1 of the Criminal Code of Procedure. The Court will opt not to follow the sentencing guidelines in this particular case.
This defendant, although he is eligible to receive a suspended sentence this Court feels that this defendant is not entitled to receive a suspended sentence or to be placed on probation because of this offense. The Court also feels that if this defendant would receive any lesser sentence than the one that I will impose, it would deprecate in my opinion the seriousness of this particular charge. The Court also feels the defendant is in need of correctional treatment or a custodial environment that can be designed most effectively by his being placed into the State Penitentiary.
See also Soraparu, supra at 2-3, 1108 (Waltzer, J., dissenting). At resentencing, the trial judge stated:
The Court finds, again, that this was a very deliberate and cruel act caused to this particular victim. The facts of the case were, as I recall them, that the victim and the defendant had been engaged in some sort of an argument at an earlier time. The victim's relative had been engaged in an argument at some earlier time. The victim was then walking in a neighborhood where the defendant was present. The defendant told several of the younger people who were out there in that area to go inside. They told him no, that they were going to stay out and see what went on.
The defendant, nevertheless, went up to the back of the victim in this matter, one *1322 Jimmie Watson, placed a gun to the back of his head, and fired one shot. The children or the people that were in the area talked about how the blood was gushing out of his head like a faucet, like a water faucet, as he fell to the ground and eventually died.
It was also noted that this act occurred in the presence of a family member of the victim; that she had to watch this young man as he lay there and he died.
The Court is going to, again, emphasize that I find this was a very deliberate and cruel act caused to this particular victim. The jury found the man guilty of manslaughter. I stated initially that it could have very easily been second degree murder. I disagree with their finding. I accept their finding, nevertheless, because they are thethey impose what is the law in this particular case.
I further find that in this particular case walking up behind another man and placing a gun to the back of his head and pulling the trigger places the victim in this particular case in a particularly vulnerable position in that he is incapable of resisting the act in any way. He does not even see what is coming. There is no chance for him to run or flee or do anything to protect himself in this instance. I think that should be considered against Mr. Soraparu in this case.
I further find that the offense, in my particular opinion, is going to result in a significant and a permanent injury to a family member of this particular victim. I assume this young lady will go to her grave remembering that she saw a family member or a loved one falling to the ground with blood gushing out of his head as if it were coming out of a water fountain. I find this to be a significant and permanent mental injury that this woman will suffer for the rest of her life.
In addition to that fact, the Court will also note that a handgun was used. The defendant did use a dangerous weapon, that is a handgun, in the commission of this particular offense.
I also am going to note for the record that to commit this offense, in my opinion, in the presence of other peopleother younger peopleand, of course, it's noteworthy that only one of these people, out of fear, and that's what it's aboutonly one of the number of people who observed this killing, this murder, came forward to testify. The vast majority of themand there were more than one. There was a number of people out there when this occurred, but only one had the courage and fortitude to come forward and testify against you. And his testimony resulted in this jury finding you guilty.
I am going to, again, impose the exact same sentence that I imposed before because I do feel it is the appropriate sentence for the action which you caused. It is, therefore, the sentence of this Court that you again will be turned over to the Director of Louisiana Department of Corrections for a period of 40 years at hard labor. You shall receive credit for any time you've already served in connection with this case.
. . . .
The record further reflects [a prior arrest for possession with the intent to distribute cocaine, a prior arrest for distribution of marijuana, and a prior municipal simple battery arrest] is the extent of the defendant's criminal history. The record will reflect he has no convictions, but those, in my opinion, are significant arrests and the fact that he did not show up for a court appearance in municipal court should also be considered in this sentencing.
The trial judge's reasons for resentencing, although providing greater detail, do not substantially enlarge upon the original reasons for sentencing which were found on appeal to be inadequate to justify the original sentence. Moreover, there are several instances in which the trial court's justifications for the sentence imposed are clearly contrary to the evidence.
At trial, a forensic pathologist testified that the victim had a single gunshot wound fired *1323 from close range (but without the residual gunpowder that would be expected if the shot were fired from within twelve inches) that went in the left side of his head above and slightly behind his left ear. He opined that the forensic evidence was not consistent with a point blank shot to the back of the head. There was never any testimony that blood was "gushing out of his head." In fact, the investigating officer, who testified that he saw the victim laying face down in the middle of the street with blood seeping from his head, indicated that homicide was not called to the scene because he did not expect the victim to die and the victim did not die at the scene. There was also never any testimony to indicate that any member of the victim's family witnessed the shooting. The only witness to testify indicated that the Soraparu and the victim were arguing and appeared ready to fight. The record does not indicate why other witnesses, who were the family of the testifying sixteen-year-old witness and not related to the victim, did not testify.
In the prior appeal, this Court reviewed the record and found the sentence of forty years imprisonment at hard labor excessive. At resentencing, the only additional reasons provided for imposing the same sentence were the use of a handgun and the perpetration of the crime in the presence of a young witness, which facts were apparent in the record when it was reviewed by this Court previously. The trial judge also noted Soraparu's prior arrests for possession with intent to distribute cocaine, possession of marijuana, and a municipal battery charge. These additional considerations, when viewed in the context of this Court's prior opinion, the inaccuracies contained the trial judge's reasons for sentencing and resentencing, and the trial judge's apparent disagreement with the jury's findings of fact, do not support the imposition of the same sentence.
Code of Criminal Procedure article 881.4(B) provides that "In the interest of justice, the appellate court may remand the case for resentencing before a judge other than the judge who imposed the initial sentence." Although there is little jurisprudence that develops this article, we find that none is necessary given the Article's grant of authority in clear language. Cf. State v. Winters, 612 So.2d 259, 262 (La.App. 4th Cir.1992). There is also authority in the jurisprudence for instructing the trial judge as to the maximum sentence that is justified by the record and that would be upheld on appellate review. See, e.g., State v. Wyatt, 591 So.2d 761, 765-66 (La.App. 2d Cir.1991); State v. Miller, 587 So.2d 125, 129-30 (La. App. 2d Cir.1991); State v. Edwards, 575 So.2d 902, 905 (La.App. 2d Cir.1991); see also La.C.Cr.P. art. 881.4(A). Under the circumstances of this case at least, both remedies seem appropriate to ensure that this defendant receives a fair and particularized sentence. We invoke both remedies in the instant case simply out of an abundance of caution in the hopes that the defendant's third sentencing will be his last.
In our previous opinion, this Court reviewed the record and found it indistinguishable from that in State v. Coleman, 94-0666 (La.App. 4th Cir. 12/15/94), 647 So.2d 1355, writ denied, 95-0145 (La.5/19/95), 654 So.2d 1354, and concluded that the disparity in their respective sentences was unjustified. Soraparu, supra at p. 9, 1105. Because the trial judge failed to comply with the previous opinion, this case must again be remanded for resentencing.
Accordingly, the sentence is vacated and this matter is remanded for resentencing in accordance with this and the previous opinion to a period of imprisonment found appropriate under the facts in the wide discretion of the sentencing judge but not to exceed twenty years. See Coleman, supra; see also State v. Carey, 506 So.2d 813, 815 (La.App. 1st Cir.1987), writ denied, 508 So.2d 818 (La.1987). It is further ordered in accordance with Code of Criminal Procedure article 881.4(B) that this case be reallotted for resentencing before a judge other than the judge who imposed the initial sentence.
SENTENCE VACATED; REMANDED FOR RESENTENCING.
BARRY, J., dissents with reasons.
*1324 BARRY, Judge, dissenting with reasons.
There is no basis to remove the trial judge from this case or to set a maximum sentence of 20 years.
To support removal of the trial judge, the majority cites alleged inaccuracies between the trial judge's reasons for sentencing and the record:
1.) A forensic pathologist testified that the evidence was not consistent with a point-blank shot to the back of the head. However, he said the autopsy showed the bullet was fired from close range (possibly within twelve inches) to the side of the head. The latter statement corroborated the testimony of an eyewitness that the defendant's gun was "just inches" away. There is no doubt that the bullet was fired from very close range, which the trial judge interpreted to be "point blank" range. That can hardly be considered as deviating from the record.
2.) No one testified that blood was "gushing" from the victim's head, but the record establishes that blood was "coming out his head." The trial judge referred to "gushing," which I submit is an insignificant variance.
3.) Before the defendant shot the victim he advised others to go inside. That was a "cold and deliberate act" according to the trial judge. After the murder the defendant said "Now it's over" and walked away. The majority is concerned because the trial judge incorrectly noted that the victim's family witnessed the shooting, whereas a sixteen year old testified that he, his siblings and other family members witnessed the shooting.
The above variances are not "clearly contrary to the evidence."
La. C.C.P. art. 881.4(B) provides:
In the interest of justice, the appellate court may remand the case for resentencing before a judge other than the judge who imposed the initial sentence.
The reallotment ordered by the majority ex proprio motu is a forced recusal which implies that the trial judge is prejudiced or that he committed a grievous error(s). The reallotment hinges on the above minor variances found in the reasons for sentence.
Article 881.4(B) has not been cited in any jurisprudence as a basis to remove a trial judge from a case. See State v. Winters, 612 So.2d 259 (La.App. 4th Cir.1992), which did not cite art. 881.4(B). Article 881.4(B) should be reserved for egregious conduct which is not present here. Judge Cannizzaro conducted a fair trial and is in the best position to sentence the defendant. His forced recusal by this Court is not "appropriate to ensure that this defendant receives a fair and particularized sentence."
Further, considering that the murder was deliberately and coldly executed with a handgun in the presence of young people, I would not handcuff the sentencing judge by imposing a twenty year maximum sentence.
I dissent.