Ji_WOODARD, Judge.
Pursuant to a plea agreement, Timothy T. Williams entered guilty pleas to two counts of possession of cocaine with the intent to distribute and one count of conspiracy to distribute cocaine. A charge of possession of *1345 cocaine was dismissed, and a charge of distribution of cocaine was amended to conspiracy to distribute cocaine. The defendant was sentenced to consecutive sentences of eight, seventeen and twenty-three years. He appeals the sentences, claiming that they are excessive. We affirm.
FACTS
The state originally charged the twenty-eight year old defendant with four narcotics violations: two counts of possession of cocaine with intent to distribute, one count of possession of cocaine, and one count of distribution of cocaine. As a result of a plea bargain agreement entered on March 8,1995, the state agreed to dismiss the possession of cocaine charge and reduce the distribution of cocaine ^charge to conspiracy to distribute cocaine, in return for the defendant pleading guilty to the conspiracy charge and the two remaining charges of possession of cocaine with intent to distribute. Additionally, the defendant was allowed to remain free on bond, a presentence investigation report was ordered, and the defendant agreed to cooperate with the police. The effect of the plea bargain agreement was to reduce the defendant’s maximum sentencing exposure from ninety-five years down to seventy-five years.
Subsequently, the defendant pleaded guilty to participating in three separate narcotics transactions on October 5, 1993, January 26, 1994, and December 16, 1994, as follows:
Docket number 91-150,331 (CB95-1556): On January 26, 1994, defendant and four others were arrested at 1133 George Du-puis Road, in St. Martin Parish, after agents received information that defendant had cocaine in his possession at his residence. Ten (10) rocks of crack cocaine were found.
While the officers were executing a search warrant, an individual ran to the rear bedroom and threw a match box containing crack cocaine out of the window where agent Paul Rochelle was present. After his arrest, defendant, with his counsel present, gave a verbal confession indicating he sent a juvenile and another person to pick up the drugs.
Docket number 95-160,591 (CR95-1556): On December 16, 1994, defendant and another person were arrested after the St. Martin Parish Sheriffs Office received information that defendant had drugs in his possession. After executing a search warrant the officers found seven (7) large rocks of crack cocaine in a small plastic container inside the sewer pipe. The defendant had flushed it down the toilet.
Docket number 91.-868 (CR96-Ü): Defendant was arrested on October 5,1993, after an investigation was conducted by the Iberia Parish Sheriffs Department, working in conjunction with the St. Martin Parish Sheriffs Department, pursuant to information received by them from an informant, that defendant was going to a hotel in Iberia Parish to recover money from people whom defendant fronted drugs to sell in Iberia Parish. The money was recovered. After obtaining permission to search defendant’s St. Martin residence, the officers recovered cocaine residue and a nine millimeter pistol.
After the defendant entered his guilty pleas, he remained out of jail on bond, yet the police again arrested him on March 28, 1995, for selling crack cocaine. From | gMarch 28, 1995 until the July 27, 1995 sentencing hearing, the defendant remained incarcerated.
PROCEDURAL HISTORY
Defendant, Timothy T. Williams, was charged with three crimes in St. Martin Parish, and one crime in Iberia Parish. The St. Martin Parish charges consisted of two counts of possession of cocaine with the intent to distribute, in violation of La.R.S. 40:967(A), and one count of possession of cocaine, which was later dismissed. The Iberia Parish charge consisted of one count of distribution of cocaine, in violation of La.R.S. 40:967(A).
Pursuant to a plea agreement with the district attorney for the Sixteenth Judicial *1346 District, on March 8, 1995, the defendant appeared before the court in St. Martin Parish, withdrew his former pleas of not guilty and entered pleas of guilty to the St. Martin Parish charges of possession of cocaine with the intent to distribute. The State amended the Iberia Parish charge of distribution of cocaine to conspiracy to distribute cocaine and dismissed the St. Martin Parish charge of possession of cocaine. The defendant pleaded guilty to the conspiracy charge. On July 27,1995, in St. Martin Parish, the defendant was sentenced to consecutive sentences of eight years at hard labor for the Iberia Parish offense and seventeen years at hard labor and twenty-three years at hard labor for the St. Martin Parish offenses.
On August 2,1995, the defendant filed two motions to reconsider sentences, one for the sentence imposed for the Iberia Parish offense and the other for the sentences imposed for the St. Martin Parish offenses. The trial court denied both motions on August 24, 1995. Defendant now seeks review by this court of the St. Martin sentences.
ASSIGNMENTS OF ERROR
The defendant claims the following assignments of error:
1.The trial court erred by failing to take into consideration any mitigating factors pursuant to the sentencing guidelines and sentenced your defendant to a term of imprisonment far exceeding the term as listed in the sentencing guidelines.
_jj2. The trial court erred in sentencing the defendant to a term of imprisonment of 17 years, 23 years, and 8 years to run consecutively, as such was an excessive sentence which is cruel and unusual pursuant to the U.S. and Louisiana Constitutions.
Pro-Se Assignments of Error
1. Although the State claims defendant distributed drugs on October 5, 1993, he was not arrested until a few months later. A bad guy would not buy a gun under his own name.
2. Although defendant was arrested along with four other people on January 26, 1994, he did not give money to a juvenile to buy drugs, contrary to what the State presented. Defendant did not throw drugs out of the window that day because he was asleep and the bedroom he was in had an air conditioner in the window. Giving money to relatives totaling $470.00 does not make defendant a big drug dealer.
3. On December 16, 1994, the police did not find a film of cocaine powder on his counter top, but rather worm medicine for his dog that he smashed with a screw driver. Also the police could not have found large pieces of crack cocaine in the sewer pipe after defendant flushed drugs down the toilet, because he flushed the toilet many times.
4. There was a defect in the search warrant executed on December 16, 1994.
5. If the State had an informant who went with defendant to Houston to buy a large amount of drugs, why were no drugs discovered.
6. Defendant denies selling drugs to Vicki Angelle because he never saw her before.
7. Defendant denies selling drugs to Earlene Higginbotham; he only bought a dog from her.
8. Defendant is not the biggest drug dealer in the north part of St. Martin Parish.
9. Breach of a plea bargain agreement, wherein defendant and the State made a plea bargain agreement that defendant would receive concurrent sentences of seven (7) years and would also be recommended for the IMPACT program.
I ¡¿ERRORS PATENT
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
*1347 The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
In accordance with this article, all appeals are reviewed for errors patent on the face of the record. A review of the record in the present case reveals no errors patent.
LAW
Assignment of Error Number 1
In his first assignment of error, the defendant argues that the trial court erred by failing to take into consideration any mitigating factors pursuant to the sentencing guidelines and in sentencing him to a term of imprisonment far exceeding the terms as listed in the guidelines. Specifically, defendant contends the trial court did not consider that the defendant pleaded guilty and accepted responsibility, nor did the trial court consider that the defendant expressed genuine remorse.
In defendant’s motion to reconsider sentence, he did not list as specific grounds the mitigating factors he claims the trial court had failed to consider. He simply stated, “[T]he trial court failed to take into consideration any mitigating factors pursuant to the sentencing guidelines_” Thus, finding the defendant’s claim regarding mitigating factors to have been brought improperly before this Court, the defendant’s appeal is limited to a review of his claim of exeessiveness. State v. Mims, 619 So.2d 1059 (La.1993), appeal after remand, 626 So.2d 856 (La.App. 2 Cir.1993).
However, the record reveals that the trial court did, in fact, consider the sentencing guidelines as required by State v. Smith, 93-402 (La.7/5/94); 639 So.2d 237. Although the sentencing guidelines were repealed by Act No. 942 of the 1995 Legislative Session, the repeal became effective on August 15, 1995, and the |6defendant was sentenced on July 27, 1995. If the trial court had faded to consider the guidelines, jurisprudence dictates that it would be a waste of judicial resources to vacate the sentence for failure to consider the old guidelines and remand for resentencing under the new scheme which no longer requires consideration of these guidelines. See State v. Lennon, 95-0402 (La.App. 4 Cir. 9/15/95); 661 So.2d 1047. Thus, compliance with the sentencing guidelines is no longer required.
Additionally, the trial court is not required to refer to every aggravating and mitigating circumstance. State v. Smith, 433 So.2d 688 (La.1983); State v. Stein, 611 So.2d 800; La. Code Crim.P. art. 894.1(C). In the present ease, however, the trial judge considered aggravating factors listed in Louisiana Sentencing Guidelines § 209B; namely, as is apparent from a review of his reasons, sections 209B(2), (9), (11), (12), (13), (15), (16), and (19), as well as the testimony presented at the sentencing hearing by both parties. Although the trial judge did not articulate that he considered as a mitigating factor that defendant pleaded guilty to the charges, it should be noted that he presided over both defendant’s guilty plea hearing and his sentencing and was, therefore, fully aware that defendant had pleaded guilty to the charges. Regarding defendant’s expression of remorse, it is important to note that he only expressed remorse because of what he saw while he was incarcerated; namely, the negative effects of drug abuse suffered by other prisoners. However, he also admitted that he knew that his customers were addicts, but that, at the time, this did not bother him because he was making money. Therefore, there was not much for the trial judge to consider in terms of mitigation. For the foregoing reasons, defendant’s first assignment of error lacks merit.
Assignment of Error Number 2
In his second assignment of error, the defendant claims that the trial court erred when it imposed consecutive rather than con *1348 current sentences and that the sentences áre excessive. For the following reasons, we find that this assignment of error also lacks merit.
At the July 27, 1995 sentencing hearing, Deputy Steven Menard of the St.’ Martin Parish Sheriffs Office testified that the defendant was the largest crack cocaine dealer in St. Martin Parish. Both Deputy Menard and Deputy Ron Sonnier |7of the Iberia Parish Sheriffs Office agreed that the defendant never cooperated with the police after his arrests, though the defendant had signed agreements to do so.
Also testifying at the hearing were two former customers of the defendant’s, Terry Angelle and Earlene Higginbotham. Earlene Higginbotham testified she and a companion purchased crack cocaine from the defendant after he had pleaded guilty to the three present charges. Higginbotham traded for the crack and offered the defendant a Rottweiler puppy in exchange. So that it would not appear that the defendant was exchanging crack cocaine for the puppy, he handed the crack cocaine to Ms. Higginbotham’s companion, Mr. Zeno. Mrs. Shirley Angelle, the mother of Mary Angelle who was another former customer of the defendant’s, testified how her daughter’s crack cocaine addiction has led to four hospitalizations in treatment facilities and forced other members of the family to care for Mary’s children.
The defendant took the stand at the sentencing hearing and admitted he had been arrested for yet another narcotics charge less than one month after his guilty pleas in the present ease. For this reason, he said that he was unable to cooperate with the police. The defendant also said the reason he chose to cooperate with the police was to prove that he was not the only person on the street selling drugs; he expressed remorse for hurting others since he did not realize how crack cocaine destroyed families until he saw for himself, while in jail, how drug addiction affected people; and, he refuted some of the allegations of the state’s witnesses and complained about the search warrant.
On cross examination, he explained he began selling crack cocaine in September of 1993. He testified that he started out simply loaning money to other drug dealers who used the money to purchase the drugs and then would repay the defendant after they made their sales. After a couple of months, the defendant had made about five thousand dollars. He quickly learned, however, that he could make more money by dealing the cocaine himself. He knew some of his customers were addicted to the cocaine, but it did not bother him because he. knew they were getting crack cocaine from other dealers. The reason for his staying in the business was money; for each ounce of cocaine, the defendant made two thousand one hundred dollars ($2,100) profit. Shortly before the court imposed sentence, he admitted that he was an addict like his customers, but his addiction was to money.
|8The defendant was twenty-eight years old at the time of sentencing. According to the presentence investigation report, he owned a bar known as either “The Levee” or “Tim’s Zydeeo” in Henderson. He was not married, but one of his co-defendants, Elizabeth Pat, was his “consort.” He has no children, but one of his eo-defendants is one of Ms. Pat’s children.
Technically, he is a first offender because he had no prior convictions before any of these arrests occurred. However, he continued to sell crack cocaine from his first arrest in 1993 until his fourth arrest on March 28, 1995. At the time of the defendant’s sentencing, July 27,1995, the Sentencing Guidelines were still in effect although they were repealed less than three weeks later. The trial judge referred to the aggravating circumstances justifying his departure from the guidelines, and the evidence presented supports the upward departure.
The next issue is whether the sentences are excessive. The defendant received sentences of seventeen years, twenty-three years, and eight years, for the three offenses, but theses sentences are to be *1349 served consecutively for a total term of imprisonment of forty-eight years. Concerning the issue of consecutive versus concurrent service of sentences, the trial judge noted that the defendant’s crimes did not occur at once but over a period of more than one year and that he continued to violate the law after each arrest. Therefore, concurrent service of sentences was not appropriate.
We next consider the issue of whether the length of imprisonment is excessive. In State v. Sepulvado, 367 So.2d 762 (La.1979), the supreme court determined that art. 1, § 20 of the Louisiana Constitution of 1974 authorized appellate review of individual sentences for excessiveness. The court in Sepulvado found that the statutory criteria set forth in old La.Code Crim.P. art. 894.1 (1977) provided the appropriate criteria to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives. The jurisprudence clearly indicates that to constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime that it shocks our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d9g615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). In addition, the trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
In State v. Jones, 94-1575 (La.App. 3 Cir. 5/31/95); 657 So.2d 424, a defendant received consecutive sentences for multiple convictions. In Jones, a total term of imprisonment of twenty-two years for two narcotics offenses and possession of a firearm by convicted felon offense was not considered excessive for a nineteen-year-old second felony offender. In State v. Watts, 596 So.2d 306 (LaApp. 3 Cir.), writ denied, 599 So.2d 316 (La.1992), a twenty year sentence for one count of distribution of cocaine was given to a defendant who had a prior record of serious criminal activity.
A review of cases from other circuits and the supreme court reveals that a forty-eight year term of imprisonment is one of the longest for cocaine offenses. See State v. Lamb, 566 So.2d 462 (LaApp. 2 Cir.), writ denied, 569 So.2d 985 (La.1990); State v. Conway, 588 So.2d 1369 (LaApp. 2 Cir.1991), writ denied, 610 So.2d 797 (La.1993); State v. Merrill, 94-0716 (LaApp. 4 Cir. 1/31/95); 650 So.2d 793, writ denied, 95-0530 (La.6/23/95); 656 So.2d 1012; State v. Strickland, 486 So.2d 1015 (LaApp. 2 Cir.1986); State v. Tilley, 400 So.2d 1363 (La.1981); State v. Flowers, 559 So.2d 1372 (La.1990); State v. Gordon, 444 So.2d 1188 (La.1984). On the other hand, there are cases affirming lengthy sentences for drug dealers such as the defendant who are not youthful, who deal in large amounts of drugs for a long period of time, or who continue to deal in drugs after an arrest or prior narcotics conviction. In State v. Lamb, 566 So.2d 462, (La.App. 2 Cir.), writ denied, 569 So.2d 985 (La.1990), a twenty-six year old defendant relocated his cocaine trafficking business from Houston to Monroe in order to make more money. The defendant had no prior felony convictions, but while out on bond from his first arrest, he was again arrested for selling cocaine. Two thirty-year concurrent sentences were imposed as part of a plea bargain and these sentences were not considered excessive under the facts.
In State v. Lewis, 567 So.2d 726 (LaApp. 2 Cir.1990), reh’g denied, writ denied, 575 So.2d 364 (La.1991), the trial court imposed a total term of imprisonment of forty years resulting from two consecutive twenty-year sentences for a defendant after his conviction on two counts of distribution of cocaine. The second circuit did lipnot consider these sentences excessive because the defendant had an extensive criminal history, poor employment record, and committed the two offenses *1350 while out on bond for a prior narcotics distribution conviction that was on appeal. In State v. Cann, 471 So.2d 701 (La.1985), the trial court sentenced the defendant to five years on a marijuana distribution count and to one thirty-year and two fifteen-year sentences on the cocaine distribution counts. The defendant owned a store that he ran with his wife, he supported his six children, and was a veteran. However, the defendant had several arrests and convictions as an adult for drug-related offenses and sold drugs on three occasions to an undercover officer within a five-week period. Although the court found his sentences to be excessive in that they were ordered to be served consecutively, it also found that none of the sentences were individually excessive, and ordered the sentences to be served concurrently for a total term of imprisonment of thirty years.
In State v. Williams, 457 So.2d 902 (La. App. 3 Cir.), writ denied, 461 So.2d 313 (La.1984), the court upheld a 20-year sentence imposed on a defendant convicted of possession with intent to distribute cocaine. The defendant had an extensive history of criminal activity, and there was evidence that he was a major dealer of numerous illegal drugs. The third circuit based its holding in part on State v. Bonanno, 384 So.2d 355 (La.1980), where the supreme court upheld a twenty-one-year sentence imposed on a large-scale dealer of cocaine who was found with one pound of cocaine and intended to develop a large cocaine market in the area. See also State v. Collins, 612 So.2d 780 (La. App. 1 Cir.1992), writ denied, 614 So.2d 1255 (La.1993); State v. Gibson, 628 So.2d 156 (La.App. 2 Cir.1993); State v. Batiste, 594 So.2d 1 (La.App. 1 Cir.1991).
The problem in this case is that the defendant’s total term of imprisonment appears to be excessive, but the defendant’s misconduct also appears to exceed that of the defendants described above. In the present case, defendant was sentenced to seventeen years, the middle range provided by law, and twenty-three years, the upper range provided by law, for the two St. Martin Parish offenses. The two sentences were ordered to run consecutively. The trial judge considered that the defendant knew that two of the three people to whom he sold drugs were addicted to the drug, but continued to sell to them without any concern for the damage the drugs were causing them, because he wanted to make money. The trial judge also considered the | udefendant’s persistence in dealing drugs despite numerous arrests and attempts by law enforcement to cooperate with him and that he benefitted from other people to whom he provided drugs to sell to others. Additionally, the trial judge considered defendant’s use of a juvenile in the trafficking of drugs. Based on the trial judge’s experience and the testimony he heard, the trial judge agreed with the opinion of Officer Menard that defendant was one of the largest drug dealers in St. Martin Parish.
In State v. Cann, the supreme court found that the individual sentences of the defendant were not excessive, but to order consecutive service was excessive. However, the harm caused by defendant’s conduct and the fact that he was motivated solely by greed supports the lengthy sentences. Additionally, the fact that the three offenses occurred over a fifteen-month period, and the defendant committed yet another offense after he pleaded guilty and had received dismissal of one charge and reduction of another charge by plea bargain, clearly establishes that this defendant is not phased by the threat of incarceration. Long-term incarceration is in order.
Pro Se Errors Numbers 1,2,3,5,6,7, and 8
Defendant filed a letter with this court alleging several problems with the arrest, the evidence adduced at trial, the testimony of the State’s witnesses at sentencing, the search warrant for the December 16, 1994 offense in St. Martin Parish, and the pleas of guilty. Specifically, defendant contends the facts testified to by the State’s witnesses were not true. This Court has considered the defendant’s letter as a pro se brief.
These errors all concern the credibility of the State’s witnesses. However, none *1351 of the pro se errors dealing with the sufficiency of the evidence were preserved for review on appeal as defendant pleaded guilty to the three charges, thereby precluding a trial. Furthermore, the defendant did not condition his pleas of guilty in order to preserve any non-jurisdictional defects. State v. Crosby, 338 So.2d 584 (La.1976). In addition, the defendant testified at the sentencing hearing on his own behalf and was thus able to refute the testimony of the State’s witnesses on the record. Finally, the defendant’s claims concerning the evidence presented at the sentencing hearing | i2go to the credibility determinations made by the finder of fact, and will not be disturbed on appeal, absent manifest error or abuse of discretion.
Furthermore, these issues should not be addressed on appeal, as the defendant did not preserve his right to review any pretrial claims when he entered his guilty pleas on March 8,1995. Therefore, the defendant has waived all non-jurisdictional defects State v. Crosby, 338 So.2d 584 (La.1976), and finding that the trial court did not abuse his discretion, these pro se errors lack merit.
Pro Se Error Number 4
In the defendant’s fourth assignment of error, he argues that there was a defect in the search warrant executed on December 16, 1994. Specifically, he urges that he did not consent to a search as the warrant had the wrong address. He also claims that when he told the officers to leave, Officer Menard then changed the address on the warrant to reflect defendant’s address.
This pro se error concerns a non-jurisdictional defect which the defendant did not preserve for review on appeal, therefore, this assigned error lacks merit. As stated above, the defendant did not condition his pleas of guilty to preserve nonjurisdietional defects. After the Iberia Parish charge was reduced to conspiracy to distribute cocaine and another St. Martin Parish offense was dismissed, defendant pleaded guilty to the three remaining charges.
More importantly, however, in State v. Alonzo, 95-2483 (La.5/31/96); 675 So.2d 266, 267 (citations omitted),, the Louisiana Supreme Court stated:
As a general rule, mistakes in the use of municipal numbers do not invalidate a search warrant which otherwise describes the premises with sufficient particularity such that the officer with the warrant “can with reasonable effort ascertain and identify the place intended.”
Accordingly, this assignment of error lacks merit.
Pro Se Error Number 9
In the defendant’s ninth pro se assignment of error, he asserts that he entered into a plea bargain agreement with the state wherein the defendant would receive concurrent sentences of seven years and would also be recommended for the | ^IMPACT program. However the record for CR95-1556, which contains the transcript of the guilty pleas, is devoid of any such agreement. The following colloquy took place at the plea hearing:
BY MR. HANEY:
[I]n speaking with Mr. Williams, we spoke about the possibility of him entering a guilty plea. We discussed it in my office and he indicated a willingness to do that. I explained to him the basic consequences of that and the fact that the Court would have to go over all his rights with him in order to allow him to plead guilty.
Basically I told him that if he was willing to plead guilty I would do the following. He is currently charged in St. Martinville under Docket No. 147,252 with Possession of Cocaine. I indicated to him that if the Court accepted the guilty pleas on the other charges that I would dismiss that particular charge. I indicated to him that he would have to plead guilty to Possession of Cocaine with Intent to Distribute under Docket No. 150,331 where he is a defendant along with Sedrie Gordon, Elizabeth Pat, Roland Pat and Mickey Pat. Additionally, it’s my understanding that he would enter a guilty plea under Docket No. 95-160,591 which is scheduled for trial on
*1352 April the 24th, I believe, or the 25th, as our next petit jury day. In that ease he’s charged with Elizabeth Pat with Possession with Intent to Distribute Crack Cocaine.
Additionally, Your Honor, the defendant is charged in New Iberia under Docket No. 94-868 with the crime of Distribution of Cocaine. I indicated that if Mr. Williams entered a plea of guilty to the other charges that I would amend that charge to read Conspiracy to Distribute Cocaine under that docket number, and thus he would plead guilty to three charges: Conspiracy to Distribute Cocaine under the New Iberia charge, and two counts of Possession with Intent to Distribute Cocaine under Docket No. 150,331 and 95-160,591. I also indicated to him that I would ask the Court to have a pre-sentence investigation ordered and that we would have a sentencing date set up for May the 30th, 1995, and I would request the Court to allow him to stay out on his current bond so that he can possibly do some things that we discussed, and I discussed it with the Court, regarding some information which might mitigate the sentences in this case.
It s my understanding that Mr. Williams knowing all this, has indicated he will waive the venue on the New Iberia charge and agrees to have it taken up here today, and willing to enter pleas of guilty to the two other charges in return for me dismissing one and reducing one.
BY THE COURT:
I14Q. Okay, Mr. Williams, you understand what Mr. Haney has said?
A. Yes, sir.
Q. And you want to plead guilty to those three charges?
A. Plead guilty, yeah, the two charges
[[Image here]]
Q. The two charges here and the one in New Iberia?
A. [H]ere and the one in New Iberia.
[[Image here]]
Q. Okay. I’ve been informed that you have reached an agreement with the District Attorney for you to plead guilty to Conspiracy to Distribute Cocaine and two charges of Possession of Cocaine with Intent to Distribute, and that there was no agreement regarding what the sentence would be. The only promise from the District Attorney is that they would reduce or change the charge of Distribution of Cocaine to Conspiracy to Distribute. Is that your understanding of the agreement?
A. Yes.
Q. And are you satisfied with that agreement?
A. Yes.
Accordingly, this pro se error lacks merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentences are affirmed.
AFFIRMED.